[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff and the defendant, whose birth name was Albert, were married on December 28, 1946 in Eagle Lake, Maine. The plaintiff brought this action and then moved to the State of Maine, but the defendant has continued to reside in the State of Connecticut for the period necessary to confer jurisdiction in this court, if it were contested, which it is not.
The defendant is represented in this court by Carol May and Karen Daigle, her daughters and co-conservators. Mrs. Daigle is currently residing in the marital home at 1442 Hamilton Avenue, Waterbury. Mr. Daigle, who currently represents himself after two attorneys sought to withdraw, worked for Northeast Utilities for thirty-two (32) years, retiring in 1989. The parties resided in Connecticut after his retirement, but spent two summers in Maine, prior to difficulties in the marriage.
The plaintiff claimed that the marriage ended because the defendant wife became emotionally and psychologically unstable. He claimed that two of their daughters moved in and "took over" and applied for a restraining order which ordered him out of the house.
He characterized the marriage as "happy" until 1990, when his wife's behavior became erratic. He testified in cross-examination that he did not believe that she was sick, because she refuses treatment. CT Page 9262
The plaintiff now has income from a pension and Social Security in the approximate amount of Two Thousand, Two Hundred, Seventy-five ($2,275.00) Dollars per month. The current order of alimony is One Thousand, Fifty-three ($1,053.00) Dollars per month. Mrs. Daigle has medical benefits through his pension, as well as Medicare.
The parties own property in Waterbury, and the plaintiff owns property in Soldiers' Pond, Maine. He testified that he has listed the property for sale at Fifty-eight Thousand ($58,000.00) Dollars, and has has no offers for two years on that property. The plaintiff indicated that he felt that the parties should share the proceeds of any sale equally, and that he would pay her alimony. He did not specify the amount.
The plaintiff was cross-examined by counsel for the defendant. The plaintiff had invested the proceeds of a closing of a house built at 1410 Hamilton Avenue (see Defendant's Exhibit 1) into his home in Maine. He also had the ability to invest in an AARP account, which had an original balance of over Fifty Thousand ($50,000.00) Dollars. He also sold Northeast Utilities stock and combined the funds to build the house in Maine, and to invest in the AARP account. During the pendency of the action, the plaintiff was ordered by the court, Harrigan, J., to deposit cash in a box at home into an account with his then counsel. That amount was approximately Thirty-one Thousand ($31,000.00) Dollars. There was an order restraining the balance of the AARP account, which order the plaintiff violated.
In 1992, the parties sold property in Maine, for which they recovered Eighteen Thousand ($18,000.00) Dollars, with which he purchased a Lincoln, which he described as a decision his wife had made. She never drove, but he insisted in cross-examination that she had wanted the Lincoln. He sold the Lincoln and purchased a Mercury Cougar, after this action commenced. He currently owns and operates a van, and has a Bronco in Waterbury.
Since his last court appearance, he has continued to deduct a portion of the alimony order for what he CT Page 9263 considers to be rent. He paid Eight Hundred ($800.00) Dollars in April, and Two Hundred ($200.00) Dollars in May. In June, the check totaled Eight Hundred ($800.00) Dollars.
The plaintiff testified that everything they had came from his income, and that she only spent his money.
The defendant called Carol May, a conservator of her mother, the defendant. She was appointed with her sister in March 25, 1993. Her sister is co-conservator. She testified that approximately five years ago, her mother complained of hearing voices, and she had several episodes of decompensation requiring hospitalization by ambulance. She was not admitted to the hospital, but she continued to have ongoing mental problems. She has refused treatment despite her childrens' attempts to help her. Her last episode in the summer of 1994 resulted in a one week stay at the Institute for Living, where she was discharged with a psychiatric diagnosis.
The witness testified that her mother had kept a very clean house, but that her father was verbally abusive, and controlling. He refused to allow her to get her driver's license, to have friends, or to talk to neighbors. He gave her grocery money, and she was never told about family finances. She testified that her father said he would bury or burn money before he gave it to her in this divorce, because she never earned it.
As a father, she described little communication except for orders to pick up things or do things. She testified that she feared her father, and that she had observed him kick her two older brothers. She testified that the mother was kind and protective of the children, and that she always took good care of them. She worked hard according to the witness.
Karen Daigle was called as a witness. She lived with her parents during the marriage until five (5) years ago. She had a child, and lived in the basement apartment. She testified that she left because of her mother's mental condition, and her parents arguing. On one occasion, after becoming angry with her child, he grabbed her by the arm and led her downstairs. CT Page 9264 Thereafter, he nailed the connecting door shut between the main part of the home and the apartment which was used by the witness and her child.
The court must assess the totality of the evidence concerning the habits of the parties during this long-term marriage, as well as the reasons for the breakdown of the marriage, along with the statutory criteria. The court can find that the marriage has irretrievably broken down, and enters a decree dissolving the marriage. The parties have been married for forty-nine (49) years and lived a traditional life style. The plaintiff worked outside the home, and was the main wage earner. The defendant worked within the home, raised their six children, and cared for the family. She never drove, and relied upon the plaintiff at all times for her financial support.
The court finds credible the testimony of two of the daughters of the marriage, who testified to their father's use of alcohol and his physically abusive treatment of their mother over the years. The defendant was not able to testify herself, but none of the other children were brought into this divorce, and there appears to be matters that are part of the file which indicate problems of domestic violence within the parties' relationship.
The deteriorating mental state of the defendant did contribute to the breakdown of the marriage. However, the parties had lived their adult lives with one another, and the defendant has a legitimate expectation that the plaintiff will continue to support her "in sickness" according to the marriage contract. Her illness is not voluntary, even though she has been unwilling to enter treatment voluntarily. Certainly the age of the parties and the custom within which they lived their lives necessitates certain financial awards to the defendant. The plaintiff has taken leave of the obligation to care for her in her time of need. He has the ability to conduct his life and follow his interests, without the grim task of caring for an ailing spouse.
The court further credits the allegation of the daughters that the plaintiff was convinced that the CT Page 9265 assets of the marriage were his insofar as he had been the one earning the money to acquire assets. The plaintiff seems to ask the court to discount the bulk of the forty-nine (49) years of marriage, where both parties expended great effort to raise and support their children, and to make a home for themselves. The plaintiff disregarded the restraining order of the court with respect to an AARP account, and had to be ordered by the court, Harrigan, J., to leave the courthouse to retrieve some Thirty Thousand ($30,000.00) Dollars, in cash, from the marital home, which he had not disclosed in a financial affidavit. Mr. Daigle purchased expensive cars for himself, alleging that the defendant had asked him to buy those cars, and has continued to act as if he was the sole decision-maker concerning family assets.
The court makes the following orders:
1. REAL ESTATE. The plaintiff is ordered to transfer to the defendant all of his right, title and interest in property at 1442 Hamilton Avenue, Waterbury, Connecticut. She shall henceforth be responsible for all costs of maintaining that property. The defendant shall transfer any interest she may equitably claim in property at Soldier Pond, Maine to the plaintiff, and he shall continue to bear the costs of maintaining that property.
2. AUTOMOBILES. The plaintiff shall retain possession and title to his automobiles, and be responsible for all costs of ownership and maintenance thereof. He shall remove any vehicle currently on the property of 1442 Hamilton Avenue, Waterbury, Connecticut within thirty (30) days.
3. BANK ACCOUNTS. The parties shall retain their bank accounts, AARP TFB account current balance, and interest in any life insurance policies. The escrow account presently held by Ms. Porzio's office shall be distributed below. The court specifically finds that the plaintiff appropriated funds from the AARP account to his own use, and has added those funds to his share of the property distribution in this case. The court finds that he converted almost Fifty-three Thousand ($53,000.00) Dollars in 1990 and 1991. CT Page 9266
4. PERSONAL PROPERTY. The plaintiff shall retain the personal property in his possession in Maine, his boat, motor trailer, and the defendant shall retain all of the personal property in the home in Waterbury.
5. ALIMONY AND ARREARAGE THEREOF: The court will continue the pendente lite order of alimony, or Two Hundred Forty-three ($243.00) Dollars per week, permanently, by immediate withholding of the plaintiff's pension. If the pension administrator will not permit the withholding as ordered, then the court will retain jurisdiction over the imposition of a Qualified Domestic Relations Order in an amount that will yield her the weekly award. It is the court's intention that the funds be available to the defendant on a weekly basis, but that she not be forced to access the courts in the State of Maine to enforce this order of permanent support. She has neither the funds or the emotional ability to engage in a protracted proceeding. The court finds that the defendant was made financially dependent on the plaintiff during the entire course of the marriage and that his support of her should continue. She is unable to be gainfully employed. The court finds an arrearage in the amount of Two Thousand, Nine Hundred, Forty-four ($2,944.00) Dollars due to the plaintiff's unilateral reduction of the payment of alimony during the pendency of this action, along with credits he took for certain utility bills. That sum shall be paid from the escrow fund immediately.
6. ESCROW ACCOUNT: The escrow balance of over Thirty Thousand ($30,000.00) Dollars shall be disbursed as follows: a) the order in paragraph 5 above shall be paid, b) the real estate taxes due on the Waterbury property shall be paid to date, c) attorneys fees for the defendant shall be paid in full for the defense of this action, insofar as she has no other liquid assets from which to pay those fees, d) any balance remaining shall be split between the parties, with the plaintiff receiving twenty-five (25%) percent and the defendant receiving seventy-five (75%) percent.
7. RESTRAINING ORDER: The plaintiff is permanently restrained from entering onto to the property in CT Page 9267 Waterbury, or from having any contact with the defendant. He shall seek permission of the court to enter the property on a specific date to remove the Bronco. That must be accomplished within sixty (60) days.
Judgment shall enter consistent with this opinion.
DRANGINIS, J.